B. COOK BROADFOOT, Respondent, *v.* ARTHUR BIRD, Appellant.

Third Department, July 2, 1926.

Libel and slander — libelous article charged plaintiff, cashier of bank, with taking money from village treasury unlawfully — answer alleged that statement was made in campaign for village election and referred to act of plaintiff in charging against village funds, note that was alleged to have been illegally made — answer alleged that defendant publisher was assured of truth of statement by maker thereof and believed it to be true — both defenses are proper as partial defenses in mitigation of damages.

In an action against the owner of a newspaper for libel based on an article signed by a third person and published in the newspaper which charged the plaintiff, the cashier of a bank, with having taken from the village treasury a certain amount of money illegally and unlawfully, the defendant had the right to plead as a partial defense in mitigation of damages that the article appeared in the newspaper during a campaign for village election and referred to the act of the

plaintiff, who was the cashier of a bank from which the village had borrowed the money, in charging off a note given by the village against village funds claiming that it was illegal to do so, since the note itself was illegal in that it was given to secure the payment of the loan in anticipation of taxes which loan was in excess of the amount of taxes of the fiscal year then remaining unpaid. The defendant had the right to plead also that the author of the article assured him that the statements contained therein were true, and that the defendant upon such assurances, and in the belief that the matter was true, published it in his newspaper.

APPEAL by the defendant, Arthur Bird, from an order of the Supreme Court, made at an adjourned Chenango Special Term and entered in the office of the clerk of the county of Delaware on the 21st day of November, 1925, granting plaintiff's motion to strike out from defendant's amended answer all of the allegations contained in paragraphs " second " and " third."

*Hinman, Howard & Kattell,* for the appellant.

*Seybolt & Seybolt* [*Alva Seybolt* of counsel], for the respondent.

H. T. KELLOGG, J. This is an action of libel. The complaint sets forth that the defendant is the editor and proprietor of a newspaper, the Sidney *Record;* that it published an article therein, signed by one Pudney, which was defamatory of the plaintiff. The article is set forth in the complaint. It charges, among other things, that " illegal, unlawful, dishonest and discreditable procedure " had occurred in the administration of the affairs of the village of Sidney; that Sidney had been " defrauded out of taxpayers' money; " that " graft had entered in; " that there had been a " conspiracy formed for illegal and unlawful handling and use and taking of Sidney's moneys; " that when the facts were out " there may be more than one to answer before justice; " that the writer's friends were saying: " It smells of oil. Sounds like Teapot Dome; " that the plaintiff, B. C. Broadfoot, was the leader in all this; that Broadfoot " took from Sidney village treasury $6,327.00, illegally, unlawfully, on February 7th." The defendant set up in its amended answer two defenses in mitigation of damages, numbered " second " and " third." A motion to strike out these defenses was granted and this appeal was taken.

The " second " defense alleges that the article was published without malice; that, prior to the publication of the article, the board of trustees of the village of Sidney had caused to be borrowed from the People's National Bank, in anticipation of taxes, the sum of $6,000; that the plaintiff was the cashier of such bank; that the borrowing was unlawful for the reason that the amount was in excess of the amount of taxes of the fiscal year then remaining unpaid; that Pudney, the author of the article, was afterwards

elected village president; that he proposed to the board that an audit be made of the village funds; that the board declined to make an investigation; that in this it was supported by the plaintiff; that on February 7, 1924, the plaintiff, acting as cashier of the People's National Bank, unlawfully charged off the $6,000 note against deposits of the village in such bank; that these matters were the subject of discussion in a village election in which Pudney sought re-election; that the plaintiff was active in supporting the opposition candidate; that " the said words complained of referred to the said transaction of illegal borrowing by said village and illegal payment of said note, as well as to the issues in the campaign preceding the village election; " that the " said issues were known to the public and that the said words complained of and published by the defendant were generally and publicly understood to refer to said matters." It is evident that the matters set forth did not tend to establish the truth of the charges that the plaintiff had been a participant in " dishonest " procedure " where graft had entered in; " that he had been guilty of acts which would cause him " to answer before justice; " that the thing, of which he is alleged in the answer to have been guilty, " smells of oil. Sounds like Teapot Dome." Accordingly, on a former appeal, we held that the matters set forth did not constitute a valid defense in justification. (214 App. Div. 826.) We think, however, that these matters are provable as partial defenses in mitigation of damages. As now alleged, they tend to show that the author of the article was not malicious to the extent of fabricating out of whole cloth every fact set up. It appears that his fault, if the facts alleged be true, was not so much in making a false statement as in characterizing the facts set up as indicative of graft, dishonesty and criminality on the part of the plaintiff. In particular the defensive matter explains the following charge: " The leader in all this, B. C. Broadfoot, took from Sidney village treasury $6,327.60, illegally, unlawfully, on February 7th." That statement, standing alone, might be held to impute that the plaintiff had been guilty of larceny. The facts set up in the answer tend to show that the defendant intended to assert, not that the plaintiff stole moneys of the village, but that he illegally charged off a note, held by the bank of which he was cashier, against the village deposits. It directly tends to minimize the inference that a maliciously unwarranted charge had been made.

The " third " defense sets up that the words complained of were published at the request of B. E. Pudney; that said Pudney stated to the defendant that he desired such publication in order to obtain publicity for the issues of the campaign then under way

for the election of a village president, for which office said Pudney was a candidate; that the defendant agreed to publish the same only upon condition that the said Pudney should personally vouch for the truth of the matters published; that the said Pudney assented thereto; that the defendant relied upon the assurances of Pudney and believed that the matter so published was true. Self-evidently this was matter provable in mitigation of damages. The fact that Pudney assured the defendant that the facts set up were true and that the defendant believed them to be true unquestionably tends to establish that the publication was made by the defendant without express malice on his part. We think that the matters set up in the defenses numbered " second " and " third " were properly alleged as partial defenses in mitigation of damages.

The order should be reversed, with ten dollars costs and disbursements, and the motion denied.

All concur.

Order reversed on the law, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.